IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EXECUTION SCHEDULED FOR JULY 28, 2026 @ 12:00 p.m.


JAMES AREN DUCKETT,

       *Petitioner*,

v.                                   Case No.: 5:26-cv-00524
                                            CAPITAL CASE

WILLIAM M. GLADSON,
STATE ATTORNEY,
FIFTH JUDICIAL CIRCUIT OF
FLORIDA, *et. al.*[1]


       *Defendants.*
_____/


## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

On July 22, 2026, Duckett, represented by Capital Collateral

Regional Counsel – South (CCRC-S), five days before his scheduled

---

[1] The other named defendants are: JAMES UTHMEIER, Attorney General of Florida; MARK GLASS, Commissioner, Florida Department of Law Enforcement (FDLE); PEYTON C. GRINNELL, Sheriff off Lake County; GARY J. COONEY, Clerk of Court, Lake County. (Doc. #2 at 6-7). All defendants are being sued in their official capacity.

execution, filed a 42 U.S.C. § 1983 action raising two claims.

The first claim asserts a due process violation regarding the denial of his successive Rule 3.853 motion for DNA testing of numerous additional items of evidence that were <u>not</u> included in his first Rule 3.853 motion for DNA testing. Duckett seeks Single Nucleotide Polymorphism (SNP) DNA testing of the additional items arguing that the Florida Supreme Court's prohibition on successive Rule 3.853 DNA motions violates *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). But the due process claim is barred by res judicata under *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1178-79 (11th Cir. 2019), and fails to state a valid due process claim under *Osborne*.

The second claim is an access to court claim regarding the Florida Supreme Court's dismissal for lack of jurisdiction of an interlocutory appeal. The access-to-courts claim is barred by the *Rooker-Feldman* doctrine and fails to state a valid claim. It is not a denial of access to courts to dismiss an interlocutory appeal.

The § 1983 action should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Background

On May 11, 1987, Duckett raped and murdered 11-year-old Teresa McAbee. Duckett's fingerprints were commingled with the victim's palm prints and fingerprints on the hood of his patrol car, despite it having rained earlier the evening of the murder. Additionally, Duckett was the last person seen with the victim late that night and her body was found early the next morning in a nearby lake by a local fisherman. The tires of his patrol car matched the tire tracks found around that lake. The tires were "unusual" because they were Goodyear snow tires, which are not typically sold in south Florida, that were donated to the police by a local tire store that received the tires by mistake. *Duckett v. State*, 231 So. 3d 393, 397–98 (Fla. 2017) (recounting the evidence presented at trial citing *Duckett v. State*, 918 So. 2d 224, 228–29 (Fla. 2005)).

After Governor DeSantis signed a warrant, Duckett filed a motion for Single Nucleotide Polymorphism (SNP) DNA testing of slide Q-6(3) on March 6, 2026. The State agreed to DNA testing and the postconviction court granted the first motion for DNA testing. DNA Labs International, Inc. (DLI), conducted the SNP DNA testing using the ForenSeq Kintelligence Kit.

3

Duckett appealed aspects of the SNP DNA testing to the Florida Supreme Court. On March 26, 2026, the Florida Supreme Court granted the motion for a stay of execution to allow for completion of the DNA testing. *Duckett v. State*, 431 So. 3d 990, 993 (Fla. 2026). The DNA tests were "inconclusive" and neither the Florida Department of Law Enforcement (FDLE) nor DLI had the capability perform a statistical analysis on the SNP data. *Duckett*, 431 So. 3d at 993. FDLE reported that a qualified bioinformaticist may be able to perform a statistical analysis on the DNA data. *Id.* at 994. On April 30, 2026, the Florida Supreme Court remanded the case to the postconviction court to allow the defense to perform a statistical analysis. *Id.* at 996, 997.

On remand, on May 4, 2026, the state postconviction court ordered DLI, the laboratory that had conducted the SNP DNA testing, to provide the testing data to the defense. (Doc. # 1386). It is undisputed that all the underlying data from DLI was provided to Duckett's counsel to obtain a statistical analysis.

On June 2, 2026, the State filed the statistical analysis of the SNP DNA test results generated by Parabon Nanolabs, Inc. (Parabon) in the circuit court. (Doc. #1401). Parabon analyzed the SNP DNA data using

4

EuroForMix genotyping software. Parabon's statistical analysis concluded that it is 4,100 times more likely that the sperm collected from the underwear of the 11-year-old victim is Duckett's DNA than it is not his DNA.

On July 11, 2026, the defense filed a report from Dr. David Mittelman, Ph.D., of Othram, Inc., who is a bioinformaticist. (Doc. #1404). Dr. Mittelman's report stated that "'the dataset did not contain sufficient information to support a reliable contributor conclusion." Othram Rpt. at 4. Dr. Mittelman stated that he was "unable to identify a validated framework that would permit reliable contributor assessment from a dataset this sparse." *Id.* at 5. The defense expert's opinion was the "available DNA data contain too little usable information to support a reliable contributor determination." *Id.* Dr. Mittelman, however, acknowledged that the presence of alleles at two loci that are not observed in Duckett's DNA profile, does not "exclude" him. *Id.* at 6. Dr. Mittelman also acknowledged that the "Y-chromosome results are consistent with a paternal lineage." *Id.* at 9. The defense expert concluded: "I cannot state, to a reasonable degree of scientific certainty, that James Duckett either is or is not a contributor to the evidentiary DNA mixture" because the

"available data are insufficient to support either an inclusion or an exclusion." *Id.* at 10. At bottom, the Othram report took the view that the recent SNP DNA results were inconclusive.

On July 8, 2026, the Florida Supreme Court denied the claim of actual innocence as "meritless." *Duckett v. State*, No. SC2026-0449, 2026 WL 1970442, at *4 (Fla. July 8, 2026). The Court noted that "Florida does not recognize an independent claim of actual innocence." *Id.* at *4 (citing *Sweet v. State*, 293 So. 3d 448, 453 (Fla. 2020), and *Elledge v. State*, 911 So. 2d 57, 78 (Fla. 2005)). The Florida Supreme Court also lifted the stay. *Id.* at *5.

Duckett filed a successive Rule 3.853 motion for SNP DNA testing of numerous additional items that were not included in the first motion for DNA testing. The postconviction court denied the successive motion for DNA testing, in part, because it was a successive motion.

Duckett appealed the denial of the successive motion for further DNA testing of the additional items to the Florida Supreme Court. *Duckett v. State*, No. SC2026-1084. On July 24, 2026, the Florida Supreme Court affirmed the denial of the successive motion for DNA testing, in part, because it was a successive motion.  The Florida Supreme Court found the

6

successive DNA motion was procedurally barred, relying on *Reynolds v. State*, 373 So. 3d 1124, 1126-27 & n.6 (Fla. 2023). See Order at 3.

## ARGUMENT UNDER RULE 12(b)(6)

The due process claim regarding the prohibition on successive DNA motions is barred by res judicata and alternatively, fails to state a valid claim under *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). The access-to-courts claim is barred by the *Rooker-Feldman* doctrine and fails to state a valid claim. The § 1983 action should be dismissed under Rule 12(b)(6).

### Claim 1 – Due process and successive motions for DNA testing

Duckett asserts the denial of his successive motion for SNP DNA testing of additional items that were not included in first motion for SNP DNA testing violates due process under *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). (Doc. #2 at 71). The due process claim is barred by res judicata and is meritless as a matter of law under *Osborne* itself. It is not a denial of fundamental fairness to prohibit successive motions for DNA testing. The due process claim should be dismissed for

failure to state a claim under Rule 12(b)(6).

### Barred by Res Judicata

The due process claim raised in the § 1983 action is barred by res judicata.

A defendant may raise preclusion defenses in a Rule 12(b)(6) motion to dismiss. *Smith v. Sec'y of Veterans Affairs*, 808 Fed. Appx. 852, 853-54 (11th Cir. 2020) (affirming a district court's dismissal of a complaint under Rule 12(b)(6) based on res judicata and dismissing the appeal as frivolous); *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074-78 & n.9 (11th Cir. 2013) (explaining the court could take judicial notice of the state court record to determine whether res judicata applied); *Wells v. Brown*, 58 F.4th 1347, 1357 n.2 (11th Cir. 2023) (en banc) (explaining that, when ruling on a Rule 12(b)(6) motion to dismiss, a court considers the complaint in its entirety, as well as "matters of which a court may take judicial notice" quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Under the doctrine of res judicata or claim preclusion, a claim is barred by a prior suit if: "(1) there is a final judgment on the merits; (2)

the decision was rendered by a court of competent jurisdiction; (3) the parties ... are identical in both suits; and (4) the same cause of action is involved in both cases." *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).  These named defendants, who are all being sued in their respective official capacities, are considered to be the "State" for purposes of determining the identity of the parties under res judicata. *Muhammad v. Sec'y, Fla. Dep't of Corr.*, 739 F.3d 683, 689 (11th Cir. 2014).

A federal district court sitting in Florida applies Florida res judicata principles. *Sporea v. Regions Bank, N.A.*, No. 20-11812, 2021 WL 2935365, at *2 (11th Cir. July 13, 2021) (explaining that when the Eleventh Circuit is asked to give res judicata effect to a state court judgment, it applies the res judicata principles of that state citing *Green v. Jefferson County Comm'n*, 563 F.3d 1243, 1252 (11th Cir. 2009)); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982) (explaining that 28 U.S.C. § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments; rather, a federal court must follow the State's res judicata rules).

In *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1178-79 (11th Cir.

2019), the Eleventh Circuit held some of the claims raised in a § 1983 action were barred by res judicata. Seven days before his scheduled execution, Long filed a § 1983 action raising five claims. *Id.* at 1173,1174. The five claims were (1) a challenge to the three-drug lethal injection protocol; (2) a challenge to etomidate in the lethal injection protocol; (3) an as-applied challenge to etomidate based on his medical conditions; (4) a challenge to the denial of public records and the secrecy surrounding the lethal injection protocol; and (5) a challenge to DOC denial of his request for additional observers including an additional attorney. *Id.* at 1174-75. The Eleventh Circuit agreed that three of his claims were barred by res judicata. *Id.* at 1176, 1178-79.

Duckett filed a successive Rule 3.853 motion for DNA testing of numerous additional items in the state postconviction court which was denied, in part, because it was successive.

Duckett then appealed the denial of his successive DNA motion to the Florida Supreme Court. The Florida Supreme Court issued its opinion affirming the denial of the successive DNA motion on July 24, 2026. *Duckett v. State*, No. SC2026-1083; No. SC2026-1084.

Duckett may not raise the same due process claim regarding his

10

successive DNA motion in federal court that he raised in state court.  The

due process claim is barred by res judicata.[2]

---

[2]   Alternatively, the due process claim raised in the § 1983 action could theoretically be barred by the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Eleventh Circuit recently discussed the *Rooker-Feldman* doctrine. *Wainwright v. Gov. of Fla.*, 25-11910, at 16-17 (11th Cir. June 9, 2025) (order) (expressing the belief that the claims raised in the § 1983 action were precluded by the *Rooker-Feldman* doctrine citing *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021)). But the *Wainwright* order noted that § 1983 actions challenging state statutes or state rules of court are usually exempt from the doctrine. *Wainwright*, 25-11910, at 18 (citing *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), and *Reed v. Goertz*, 598 U.S. 230, 235 (2023)). Duckett seems to be challenging both the DNA statute, section 925.11, Florida Statutes (2026), and the rule of court governing DNA testing, Florida Rule of Criminal Procedure 3.853. Under *Skinner* and *Reed*, Duckett may challenge § 925.11 and Rule 3.853 in a § 1983 action. Actually, Duckett is challenging the Florida Supreme Court's interpretation of Rule 3.853 prohibiting successive DNA motions seeking testing of items that were known to the defense but were not included in the first motion for DNA testing. *Reynolds v. State*, 373 So. 3d 1124, 1126-27 (Fla. 2023). But challenging a state court's interpretation of a state rule seems to fall outside the scope of the *Rooker-Feldman* doctrine. *Skinner*, 562 U.S. at 534-35. The *Rooker-Feldman* doctrine is jurisdictional, however, so this Court must independently address the issue. *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024); *Wainwright*, 25-11910, at 17 n.3.

**The *Osborne* Claim Fails to State a Valid Due Process Claim**

The due process claim regarding successive DNA motions based on *Dist. Atty's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009), fails to state a valid claim. Duckett has no liberty interest remaining under *Osborne* after the first round of SNP DNA testing. Alternatively, the prohibition on filing successive motions for DNA testing does not violate due process, much less the fundamental fairness standard adopted by the *Osborne* Court.

A district court may dismiss a claim under Rule 12(b)(6), if the claim does not demonstrate a legal violation. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Claims that fail as a matter of law should be dismissed whether they are "based on an outlandish legal theory" or even on a reasonable, but "ultimately unavailing" theory. *Neitzke*, 490 U.S. at 327. Claims that are "indisputably meritless" should be dismissed. *Marsalis v. STM Reader, LLC*, 806 Fed. Appx. 748, 750 (11th Cir. 2020) (quoting *Neitzke*, 490 U.S. at 327). Duckett's claim that he has a due process right to file a successive motion for DNA testing is "indisputably meritless" and should be dismissed for failure to state a claim.

In *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52

12

(2009), the United States Supreme Court held there is no substantive due process right to DNA testing. *Id.* at 72. But a prisoner does "have a liberty interest in demonstrating his innocence with new evidence under state law." *Id.* at 68. Because Alaska statutory law provided for claims of newly discovered evidence of innocence, the "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." But a convicted defendant's liberty interest after a fair trial is diminished. *Id.* at 68-69. He has a more limited interest at the postconviction stage. *Id.* at 69. The *Osborne* Court explained that "when a State chooses to offer help to those seeking relief from convictions," such as enacting DNA testing statutes, "due process does not dictate the exact form such assistance must assume." *Id.* at 69. Rather, a state's DNA procedures only have to meet the fundamental fairness standard of *Medina v. California*, 505 U.S. 437, 446, 448 (1992). *Osborne*, 557 U.S. at 69.

But any liberty interest Duckett had in demonstrating his innocence with new DNA evidence ended with the results of the first DNA testing which did not exonerate him. According to the defense expert report, the recent SNP DNA results remain inconclusive but do not exclude Duckett.

13

Indeed, the defense report acknowledged that the "Y-chromosome results are consistent with a paternal lineage." Othram Rpt. at 9. So, there is no new exculpatory evidence based on the recent SNP DNA testing. The recent SNP DNA results extinguished any liberty interest Duckett had under *Osborne*. Duckett has no liberty interest remaining in demonstrating his innocence after the results after the first round of SNP DNA testing. It is not valid to invoke *Osborne* when DNA testing was done on the most likely source of DNA remaining in the evidence of this nearly 40-year-old crime and it was to some degree inculpatory. Duckett does not have a subsidiary right to further DNA testing under *Osborne* because Florida law itself says he does not have a right to successive DNA testing.

Alternatively, it certainly is not a violation of fundamental fairness under *Medina* to prohibit successive Rule 3.853 motions for DNA testing. Even full-blown due process often prohibits second bites at the apple. *See e.g.*, *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 689 (2025) (prohibiting a second bite at the apple on intervention"); *In re Gaime*, 17 F.4th 1349 (11th Cir. 2021) (rejecting a due process argument and prohibiting "a second bite at the apple" to relitigate a wrongful-death judgment because it would increase costs). There are many prohibitions on

14

successive litigation scattered throughout the law, including, for example, both claim preclusion and issue preclusion.  Indeed, the Double Jeopardy Clause can be viewed as a type of constitutional preclusion. *Burks v. United States*, 437 U.S. 1, 17 (1978) (stating the Double Jeopardy Clause prohibits the "proverbial second bite at the apple").

The federal prohibition on claim-splitting is another example and quite analogous to state prohibition on successive motions for DNA testing. *Katz v. Gerardi*, 655 F.3d 1212, 1214 (10th Cir. 2011) (holding related claims must be brought in a single cause of action instead of splitting them into two different lawsuits); *Steele v. United States*, 144 F.4th 316, 324 & n.4 (D.C. Cir. 2025) (explaining that the prohibition against claim-splitting operates as a corollary to claim preclusion; where claim preclusion bars successive litigation following a final judgment, claim-splitting prohibits duplicative litigation filed before judgment and observing in a footnote that the First, Second, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits all prohibit claim-splitting to various degrees); *Vanover v. NCO Fin. Services, Inc.*, 857 F.3d 833, 843 (11th Cir. 2017) (explaining prohibition on claim-splitting promotes judicial economy and shield parties from vexatious and duplicative litigation).

Like the federal prohibition on claim-splitting, the state prohibition on successive Rule 3.853 motions for DNA testing promotes judicial economy and shields the state from vexatious and duplicative litigation, as the Eleventh Circuit noted in *Vanover.* But, additionally, the prohibition on successive DNA motions also prevents such motions from being used as a tactic to delay an execution. Duckett's successive motion for DNA testing filed in state court, as well as this § 1983 action filed in federal court, are both designed to delay his execution. Indeed, Duckett not only sought an injunction to preclude his execution in the § 1983 action but also filed a motion to stay his execution in this Court the day after filing this action. (Doc. #5).

It does not violate due process, much less fundamental fairness under *Medina*, to require a defendant seeking DNA testing to include all the items of evidence that are known at the time in one motion for DNA testing. The due process claim should be dismissed for failure to state a claim.

The due process claim regarding successive DNA motions is barred by res judicata and fails to state a valid claim under *Osborne.*

16

**Claim 2 – Access to courts**

Duckett asserts the Florida Supreme Court dismissing his interlocutory appeal violates access to courts. (Doc. #2 at 84). The access-to-courts claim is barred by the *Rooker-Feldman* doctrine. Alternatively, it is meritless as a matter of law. Access to courts does not include the right to interlocutory appeals. The access-to-courts claim should be dismissed for failure to state a claim under Rule 12(b)(6).

## Barred by *Rooker/Feldman*

The access-to-courts claim is barred by the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Because the *Rooker-Feldman* doctrine is jurisdictional, it is proper to raise it at any time including in a Rule 12(b)(6) motion to dismiss. The *Rooker-Feldman* doctrine is jurisdictional, so this Court must address the issue. *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024); *Wainwright v. Gov. of Fla.*, 25-11910, at 17, n.3 (11th Cir. June 9, 2025) (order).

The doctrine is based on 28 U.S.C. § 1257, which vests the authority

17

to review a state court's judgment solely in the United States Supreme Court. Lower federal courts therefore lack subject-matter jurisdiction to review state court judgments, outside of the habeas corpus context. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

The Eleventh Circuit recently discussed the *Rooker-Feldman* doctrine. In *Wainwright v. Gov. of Fla.*, 25-11910, at 16-17 (11th Cir. June 9, 2025) (order), the Eleventh Circuit expressed the belief that the claims raised in the § 1983 action were precluded by the *Rooker-Feldman* doctrine citing *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021). The Florida Supreme Court had stricken the state habeas petition filed by pro bono co-counsel without authorization from lead state postconviction counsel. *Wainwright*, 25-11910, at 7-9. Wainright then filed a § 1983 action in federal court asserting he was denied due process and his counsel of choice by the Florida Supreme Court striking his pleading. *Id.* at 10.  The Eleventh Circuit found it was "probable" that the claims were "precluded by the *Rooker-Feldman* doctrine." *Id.* at 16. So, under 28 U.S.C. § 1257, only the Supreme Court may review a state court decision, so, beside for federal habeas review, the lower federal courts lack subject-matter jurisdiction. *Id.* at 16. The *Rooker-Feldman* doctrine, however, is narrow,

18

and applies only where the claim "requires review and rejection of a state court judgment." *Id.* at 16-17 (quoting *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021)). But Wainwright's § 1983 claims "directly" challenged the Florida Supreme. *Id.* at 18-19. The panel observed that granting the relief sought on the due process and equal protection claims "would probably amount to us effectively reversing the Florida Supreme Court's decision." *Id.* at 19. The panel concluded that it was probable that the § 1983 claims would "fall within the narrow category of claims that we lack subject-matter jurisdiction to review under *Rooker-Feldman.*" *Id.* at 19-20 (citing *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012), and *Hooper v. Brnovich*, 56 F.4th 619, 627 (9th Cir. 2022) (holding that due process claims seeking "to undo the state courts' judgment" in a capital case were barred by *Rooker-Feldman*)).

In this case, the Florida Supreme Court dismissed Duckett's appeal of his motion for an evidentiary hearing "for lack of jurisdiction." *Duckett v. State*, No. SC2026-0959 (order dated July 1, 2026). The Florida Supreme Court explained that "section 925.11, Florida Statutes, and Florida Rule of Criminal Procedure 3.853 do not contemplate the holding of an evidentiary hearing after the results of DNA testing have been provided to the court,

19

the defendant, and prosecuting authority, which all parties agree has occurred here." *Id.* The Florida Supreme Court concluded: "Appellant's request for an evidentiary hearing is not authorized, and the circuit court's order denying that request is not appealable." *Id.*

To grant relief on this access-to-courts claim, this Court would have to reverse the Florida Supreme Court's decision regarding its own jurisdiction, which is precluded by 28 U.S.C. § 1257 and the *Rooker/Feldman* doctrine. The access-to-courts claim is barred by the *Rooker/Feldman* doctrine.

## Barred by Res Judicata

Alternatively, the access-to-courts claim is, at least, barred by res judicata principles. On June 26, 2026, the State filed a motion to dismiss the appeal of the motion for an evidentiary hearing on the SNP DNA testing for lack of jurisdiction and, on June 30, 2026, Duckett responded to the motion to dismiss. And, on July 1, 2026, the Florida Supreme Court dismissed Duckett's appeal of his motion for an evidentiary hearing "for lack of jurisdiction." *Duckett v. State*, No. SC2026-0959 (order dated July 1, 2026).

20

The exact issue regarding the interlocutory appeal that was litigated in the Florida Supreme Court that is now being raised in federal district court. The access-to-courts claim is barred by res judicata.

### Not a Valid Access-to-Courts Claim

Alternatively, the access-to-courts claim should be dismissed for failure to state a claim. The Supreme Court discussed its access-to-courts caselaw in *Christopher v. Harbury*, 536 U.S. 403, 412-416 (2002). The right of access is grounded in the Due Process and Equal Protection Clauses. *Murray v. Giarratano*, 492 U.S. 1, 6 (1989).

The federal courts generally also require a final order to appeal but under the collateral order doctrine, the federal courts allow some interlocutory appeals. 28 U.S.C. § 1291; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). But the federal collateral order doctrine is not a matter of federal constitutional law. *Cohen* cannot be invoked as support for a constitutional access-to-courts claim. Federal courts simply do not tell state appellate courts when to dismiss appeals as being unauthorized under state law or when the appeal is an improper interlocutory appeal.

And even applying the collateral order doctrine to this case, Duckett's

appeal of his freestanding motion for an evidentiary hearing regarding the experts' statistical analysis of the SNP DNA results, that was untethered to any pending substantive claim, does not meet any of the three requirements of *Cohen*. *Osborn v. Haley*, 549 U.S. 225, 238 (2007) (explaining the collateral order doctrine, applies when: (1) a district court order has "conclusively decided a contested issue"; (2) "the issue decided is important and separate from the merits of the action"; and (3) the order "would be effectively unreviewable later in the litigation" citing *Cohen*, 337 U.S. at 546). For example, the state postconviction court did not "conclusively" decide a "contested issue" regarding the experts' reports because the postconviction court declined to hold an evidentiary hearing on the results of the SNP DNA testing. And the issue of the evidentiary hearing is not separate from the merits of the claim because any ruling from the postconviction court on the reliability and credibility of the experts' reports on the SNP DNA would go to the core of any claim of newly discovered evidence of actual innocence. The access-to-courts claim should be dismissed for failure to state a claim.

In sum, the *Osborne* claim is barred by res judicata and fails to state a valid due process claim and the access-to-courts claim is barred by the

22

*Rooker/Feldman* doctrine and also fails to state a valid claim.

Accordingly, this Court should dismiss the § 1983 action under Rule 12(b)(6).

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ *Charmaine Millsaps*

CHARMAINE M. MILLSAPS
SPECIAL COUNSEL,
ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO. 00989134
OFFICE OF THE ATTORNEY
GENERAL OF FLORIDA
PL-01, THE CAPITOL
TALLAHASSEE, FL 32399-1050
(850) 414-3300

COUNSEL FOR ALL DEFENDANTS

CERTIFICATE OF COMPLAINCE WITH RULE 3.01(b)

I certify that this **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** is within the 25-page limit governing the length and content of a motion under the local rules. M.D. Fla. Loc. R. 3.01(b).

/s/ *Charmaine Millsaps*

Charmaine M. Millsaps
Special Counsel,
Asst Attorney General

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** has been furnished by CM/ECF to **MARY ELIZABETH WELLS**, Special Counsel of CCRC-S, 623 Grant Street. Atlanta, GA 30312; phone: (404) 408-2180; email: mewells27@comcast.net; **BRITTNEY N. LACY**, Assistant Counsel CCRC-S, 110 S.E. 6th St., Suite 701, Fort Lauderdale, FL 30301; phone: (954) 713-1284; email: lacyb@ccsr.state.fl.us; and **COURTNEY H. HAMMER,** Assistant Counsel CCRC-S, 110 S.E. 6th St., Suite 701, Fort Lauderdale, FL 30301; phone: (954) 713-1284; email: hammerC@ccsr.state.fl.us this   24th   day of July, 2026.

/s/ *Charmaine Millsaps*

Charmaine M. Millsaps
Special Counsel
Asst. Attorney General

24