# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

JAMES AREN DUCKETT,

     *Plaintiff,*

v.                                   Case No. 5:26-cv-524-JEP-PRL

WILLIAM GLADSON, et al.,

     *Defendants.*

_____/

## ORDER

## I.   Status

Plaintiff James Aren Duckett, an inmate of the Florida Department of Corrections who is scheduled to be executed on Tuesday, July 28, 2026, at 12:00 p.m., initiated this action, through counsel, by filing a Complaint pursuant to 42 U.S.C § 1983 (Doc. 2) on July 22, 2026 at 5:18 p.m., and an Emergency Motion for Stay of Execution (Doc. 5) on July 23, 2026 at 9:46 a.m. He sues the following five Defendants in their official capacities: State Attorney William Gladson, Attorney General James Uthmeier, Lake County Sheriff Peyton Grinnell, Lake County Clerk of Court Gary Cooney, and Commissioner of the Florida Department of Law Enforcement Mark Glass. (Doc. 2 at 6–7). Plaintiff asserts two claims: a violation of his Fifth and Fourteenth Amendment rights to due process and a violation of his First and

Fourteenth Amendment rights to access the courts. (*Id.* at 71–83, 84–87). As relief, he seeks an injunction compelling those Defendants, who are the custodians of certain evidence identified in the Complaint, to release such evidence so that it may be tested and the results analyzed before he is executed. (*Id.* at 87). Plaintiff also seeks a declaratory judgment that Florida Rule of Criminal Procedure 3.853, as applied by the Florida state courts in his case, is unconstitutional under the First, Fifth, and Fourteenth Amendments. (*Id.* at 88). Lastly, Plaintiff seeks a preliminary and permanent injunction prohibiting Defendants from executing him until the requested evidence testing—as well as any analysis of the testing data—is complete. (*Id.* at 90).

Before the Court are Plaintiff's Emergency Motion for Stay of Execution (Doc. 5) and Defendants' Motion to Dismiss. (Doc. 9). Defendants filed a Response to Plaintiff's Emergency Motion for Stay of Execution (Doc. 8); and Plaintiff filed a Response to Defendants' Motion to Dismiss (Doc. 12) and a reply in support of his stay motion (Doc. 10). Upon review of the parties' filings, the Court will grant Defendants' Motion to Dismiss and deny as moot Plaintiff's Emergency Motion for Stay of Execution.

## II.    Background and Plaintiff's Allegations

In 1988, Plaintiff was convicted, after a trial by jury, of the sexual battery

and murder of eleven-year-old Teresa McAbee.[1] (Doc. 2 at 7–9). The jury recommended the death penalty by a vote of eight to four, and the trial court, adopting the jury's recommendation, sentenced Plaintiff to death. (*Id.* at 8).

On May 11, 1987, Plaintiff was working the night shift as a police officer in Mascotte, Florida. (*Id.*) At approximately 10:30 p.m. that night, Plaintiff was conducting traffic enforcement on a highway across the street from a Circle K convenience store. (*Id.* at 8–9). While there, Plaintiff observed a young male and female standing behind the dumpster. (*Id.* at 9). After speaking with the clerk of the convenience store and learning the female's name was Teresa and that she was approximately ten to thirteen years old, Plaintiff went outside to speak to the two youths. (*Id.*) The young male was sixteen-year-old Salvador Calisto, who was shortly thereafter picked up by his uncle. (*Id.*) Teresa, however, remained and spoke with Plaintiff while seated in his police vehicle. (*Id.* at 10).

At approximately midnight, Teresa's mother reported her missing. (*Id.* at 10–11). The next morning, on May 12, 1987, Teresa's body was discovered in a small lake in an orange grove located approximately 3,200 feet behind the

---

[1] Unless otherwise noted, the factual assertions in this section are taken from Plaintiff's complaint. A more complete factual history can be found in the Florida Supreme Court's decision *Duckett v. State*, 568 So. 2d 891, 892 (Fla. 1990) (extensively detailing the facts of the crime). *See also Duckett v. State*, No. SC2026-0449, 2026 WL 1970442, at *1 (Fla. July 8, 2026).

Circle K. (*Id.* at 12). Thereafter, the Lake County Sheriff's Office took over the investigation. (*Id.*) During the investigation, Plaintiff became a suspect and was ultimately indicted for Teresa's murder. (*Id.* at 12–13).

At trial, as evidence of Plaintiff's guilt, the State presented, among other things: eyewitness testimony of Grace Gurley, who stated she observed Plaintiff driving away in his police vehicle with Teresa; a pubic hair found on Teresa that was consistent with Plaintiff's; tire tracks found at the scene that matched Plaintiff's police vehicle; and Teresa's fingerprints on the hood of Plaintiff's police vehicle. (*Id.* at 13). Forensic evidence was collected; however, due to the limitations of forensic testing at the time, much of the evidence was unable to be properly tested. (*Id.*)

In 2003, the Florida Supreme Court remanded Plaintiff's postconviction proceedings to the postconviction court to determine whether clothing existed that could be tested for DNA. (*Id.* at 28). The postconviction court determined certain items of evidence should be tested. (*Id.*) A Florida Department of Law Enforcement ("FDLE") analyst analyzed some of the evidence submitted and concluded no DNA profile could be obtained for the evidence tested. (*Id.*) The FDLE analyst did not test biological evidence from cuttings of Teresa's underwear due to the compromised nature of the slide upon which it was mounted and the analyst's concern that any attempt to unmount the slide would destroy the material. (*Id.* at 27–28). The analyst did not test any of the

4

other pieces of evidence submitted as the slides were broken, which prevented her from testing the biological material on the slides. (*Id.* at 29). Analysis of the fingernail scrapings yielded no probative results. (*Id.* 30–31).

After the Governor signed his execution warrant on February 27, 2026, Plaintiff filed his initial Rule 3.853 motion for postconviction DNA testing on March 5, 2026, in the postconviction court. (*Id.* at 37–38). In his motion, Plaintiff sought only to test the slide containing biological evidence from cuttings of Teresa's underwear. (*Id.* at 38). After obtaining an affidavit from the former FDLE analyst who conducted the 2003 testing, Plaintiff learned that Single Nucleotide Polymorphism ("SNP") testing would be the method of testing most likely to obtain a valid profile. (*Id.* at 38–39).

On March 6, 2026, the postconviction court held a hearing on Plaintiff's Rule 3.853 motion. (*Id.* at 39–40). The postconviction court granted testing on the single piece of evidence Plaintiff requested and ruled that FDLE would conduct "quantification analysis, and if it was deemed SNP was appropriate, FDLE would send the sample to another lab as its designee." (*Id.* at 42). After performing the quantification analysis, FDLE agreed that the best course of action was to process the DNA using SNP. (*Id.* at 48–49).

SNP testing was performed on the evidence, and on March 27, 2026, Plaintiff received the results, which were inconclusive. (*Id.* at 56). Plaintiff filed a motion requesting to have further analysis of the data completed in light of

the inconclusive results (*Id.* at 61), which the postconviction court denied (*Id.* at 65). Plaintiff appealed the postconviction court's denial, and the Florida Supreme Court reversed and remanded so that the testing data could be provided for a statistical analysis. (*Id.*)

Both the State and Plaintiff submitted the data to different laboratories for analysis. (*Id.*) The State's laboratory reported a likelihood ratio that supports Plaintiff having contributed to the evidentiary sample. (*Id.*) By contrast, Plaintiff's laboratory outlined concerns regarding the validity of that finding, and it asserted that the State laboratory report failed to provide sufficient information to evaluate its scientific validity. (*Id.*)

Plaintiff thereafter filed a successive Rule 3.853 motion requesting SNP testing of additional "intimate evidence" collected during the investigation, which the postconviction court denied as procedurally barred. (*Id.* at 67–68). The Florida Supreme Court dismissed Plaintiff's appeal of the postconviction court's order, finding it to be an appeal from a non-final, non-appealable order. (*Id.* at 69). Plaintiff subsequently filed another Rule 3.853 motion requesting DNA testing of additional items, asserting the "State had destroyed the best evidence in the case." (*Id.* at 70). The postconviction court summarily denied Plaintiff's claim as meritless. (*Id.*)

### III.    Defendants' Motion to Dismiss and Plaintiff's Response

Defendants assert that Plaintiff's Complaint is due to be dismissed

6

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 9 at 2). Defendants argue Plaintiff's due process claim regarding the postconviction court's denial of his successive DNA motion is barred by res judicata, or alternatively, is meritless as a matter of law under *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). (*Id.*) As to Plaintiff's second claim for denial of access to courts, Defendants contend this claim is barred by the *Rooker-Feldman*[2] doctrine or, in the alternative, is meritless, as the dismissal of an interlocutory appeal does not deny access to courts. (*Id.*)

In opposing the motion to dismiss, Plaintiff argues that neither the *Rooker-Feldman* doctrine nor res judicata applies to bar either of his claims, and states that construing the complaint in the light most favorable to him, he has not otherwise failed to state a claim. (Doc. 12).

## IV.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts as true the factual allegations in the complaint and construes them in the light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). To survive a motion to dismiss

---

[2] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

## V.   Analysis

### A. Due Process Claim[3]

Plaintiff asserts a violation of his Fifth and Fourteenth Amendment

---

[3] Plaintiff has filed a Petition for Writ of Certiorari in the United States Supreme Court raising the same claim he raises here. *See Duckett v. Florida*, Case No. 26-5156 (U.S. filed July 25, 2026).

rights to due process, stating he "has a liberty interest in utilizing state procedures to demonstrate his innocence and/or seek a reduction of his sentence." (Doc. 2 at 71). Specifically, Plaintiff argues that Florida's application of its postconviction relief procedure for DNA analysis violates his rights under *Osborne*. (*Id.* at 72).

Florida Rule of Criminal Procedure 3.853 "specifically governs the procedures in Florida for obtaining postconviction DNA testing." *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1260 (11th Cir. 2012). Rule 3.853, coupled with Florida Statute § 925.11, provides criminal defendants an avenue to obtain postconviction DNA testing and use exculpatory results to obtain postconviction relief. "Florida law does not, however, grant unfettered access to [this] DNA testing." *Caldwell v. McCabe*, No. 8:11-cv-841-T-23AEP, 2013 WL 5532751, at *2 (M.D. Fla. Oct. 7, 2013) (citing Fla. R. Crim. P. 3.853(b)).

Plaintiff argues the State's interpretation and application of Rule 3.853

> violates fundamental fairness and impermissibly deprives [him] of access to DNA analysis by permitting the court to deny testing even when the requirements of [the rule] are met, it precludes the parties from speaking to the analyst who conducted the testing, it precludes access to necessary records including laboratory protocols, and it implores a time limitation not contemplated by the rule, thereby placing an indefensible time restriction on new evidence.

(Doc. 2 at 74).

9

### a. *Rooker-Feldman* Doctrine

At the outset, the Court concludes that Plaintiff's challenge to Rule 3.853 and Florida Statute § 925.11 is not barred by the *Rooker-Feldman* doctrine. "The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). However, as explained in *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), while "a state-court decision is not reviewable by lower federal courts . . . a statute or rule governing the decision may be challenged in a federal action." Thus, because Plaintiff challenges a state statute and rule rather than an adverse state-court decision, he may do so in this action. Such challenges fall outside the scope of the *Rooker-Feldman* doctrine and are thus not precluded. *Skinner*, 562 U.S. at 532; *see also Reed v. Goertz*, 598 U.S. 230, 234–35 (2023).

### b. Res Judicata

Defendants argue that res judicata bars Plaintiff's due process claim. (Doc. 9 at 8–11). The Court, however, disagrees. In deciding "whether to give res judicata effect to a state court judgment, we 'must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'" *Muhammad v. Sec'y Fla. Dep't of Corr.*, 739 F.3d 683, 688 (11th Cir. 2014) (quoting *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1234, 1252 (11th Cir. 2009)).

> In other words, a judgment on the merits bars a later-filed complaint when the following four conditions are present: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom [the] claim is made."

*Id.* (quoting *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1332 (11th Cir. 2010)).

> Florida law establishes that "[a] judgment on the merits rendered in a *former* suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action."

*Id.* (emphasis in original) (quoting *Fla. Dep't of Transp. v. Juliano*, 801 So.2d 101, 105 (Fla. 2001).

Here, the causes of action are not the same. "Florida law defines identical causes of action as causes 'sharing similarity of facts essential to both actions.'" *Id.* (quoting *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1308 (11th Cir. 1992)). Defendants assert Plaintiff filed a successive Rule 3.853 motion for DNA testing of additional items in his state postconviction proceedings, the state court denied the motion, and Plaintiff then appealed that denial to the Florida Supreme Court, where it was affirmed. (Doc. 9 at 10). Central to the analysis, however, is whether the claims raised in Plaintiff's state court motions are the same claim he raises here. They are not.

11

As Plaintiff points out in his Response to Defendants' Motion to Dismiss (Doc. 12 at 7–8), in the instant case, Plaintiff brings a procedural due process claim challenging the way in which the Florida courts have applied Rule 3.853 to preclude him from testing additional evidence for DNA in a successive Rule 3.853 motion. However, in his appeal to the Florida Supreme Court on the postconviction court's denial of his successive Rule 3.853 motion, Plaintiff asserts the postconviction court erred in summarily denying his Rule 3.853 motion, arguing his motion was not procedurally barred and was facially sufficient. *See Duckett v. State*, No. SC2026-1084, Initial Brief of Appellant, at 22–29. While the underlying events are the same in all causes, the claims are not. Accordingly, the Court concludes that the doctrine of res judicata does not bar this claim.

### c. Failure to State a Claim

Nonetheless the Court concludes that Plaintiff fails to state a due process claim. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause "imposes procedural limitations on a State's power to take away protected entitlements." *Osborne*, 557 U.S. at 67. However, a convicted criminal defendant has no freestanding "right to DNA evidence untethered from the liberty interests he hopes to vindicate with it." *Id.* at 72.

"A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. "The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. As a result, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* "'[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'" *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)). In evaluating challenges to a State's postconviction procedure, the inquiry is whether it "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)).

As one basis for his due process claim, Plaintiff asserts Florida courts have imposed "an arbitrary and indefensible time restriction to Rule 3.853 motions." (Doc. 2 at 73). The time limit Plaintiff refers to, however, is no time limit at all. Rather, it is a procedural bar that precludes successive Rule 3.853 motions when the evidence a defendant seeks to test for DNA was known to him at the time of filing his initial 3.853 motion. *See Reynolds v. State*, 373 So. 3d 1124, 1126–27 (Fla. 2023). Rule 3.853 does not impose a time limit on these

13

motions, as defendants are free to file such motions "at any time following the date that the judgment and sentence in the case becomes final." Fla. Crim. P. 3.853(d). Instead, as Defendants persuasively argue, Florida courts have applied the Rule to preclude a "second bite at the apple":

> [I]t certainly is not a violation of fundamental fairness under *Medina* to prohibit successive Rule 3.853 motions for DNA testing. Even full-blown due process often prohibits second bites at the apple. *See e.g.*, *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 689 (2025) (prohibiting a second bite at the apple on intervention"); *In re Gaime*, 17 F.4th 1349 (11th Cir. 2021) (rejecting a due process argument prohibiting a second bite at the apple" to relitigate a wrongful-death judgment because it would increase costs). There are many prohibitions on successive litigation scattered throughout the law, including, for example, both claim preclusion and issue preclusion. Indeed, the Double Jeopardy Clause can be viewed as a type of constitutional preclusion. *Burks v. United States*, 437 U.S. 1, 17 (1978) (stating the Double Jeopardy Clause prohibits the "proverbial second bite at the apple").

(Doc. 9 at 14–15).

Precluding a defendant from filing successive Rule 3.853 motions—and requiring him to seek testing of all items of evidence known at the time of filing his initial Rule 3.853 motion—does not violate due process or offend fundamental principles of fairness. *Osborne*, 557 U.S. at 69. As Defendants observe: "[T]he state prohibition on successive Rule 3.853 motions for DNA testing promotes judicial economy and shields the state from vexatious and duplicative litigation . . . . [A]dditionally, the prohibition on successive DNA

14

motions also prevents such motions from being used as a tactic to delay an execution." (Doc. 9 at 16). Accordingly, Plaintiff fails to state a due process claim against Florida's prohibition on successive Rule 3.853 motions.[4]

Plaintiff also asserts Florida's application of Rule 3.853 violates his due process rights for two additional reasons: (1) the Rule does not provide for a movant to have direct communication with the agency or analyst performing the requested DNA analysis, and is silent as to a movant's access to records of communication between the State and the laboratory conducting testing; and (2) the Rule gives courts discretion in determining whether to grant DNA testing. (Doc. 2 at 74–81).

The Eleventh Circuit has held that "Florida's post[-]conviction DNA access procedures plainly do not offend any principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, nor do they transgress any recognized principle of fundamental fairness in operation." *Alvarez*, 679 F.3d at 1266 n.2. In so holding, the *Alvarez* Court reasoned as follows:

> Florida's procedures are in many ways more favorable
> to a petitioner seeking DNA access than the Alaska or
> federal statutes, *see generally* Alaska Stat. § 12.72.010
> *et seq.*; 18 U.S.C. § 3600—both of which the Supreme

---

[4] Although Plaintiff argues that he filed his successive Rule 3.853 motion because the State of Florida destroyed the best evidence in this case, his due process claims still fails for the same reasons as he could have sought testing of the evidence he now seeks to test when filing his initial motion.

15

> Court endorsed in *Osborne*. *Osborne*, [557 U.S. 52 at 62–63] (noting that "the federal statute is a model for how States ought to handle the issue" of postconviction DNA testing); *id.* at [69] (holding that there was "nothing inadequate about the procedures Alaska has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence"); *see also Cunningham [v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1263 (11th Cir. 2010)] ("*Osborne* . . . invites . . . a comparative approach, describing key elements of Alaska's process as both 'similar' to other state and federal statutes and also 'not inconsistent' with fundamental fairness.").

*Id.* While Plaintiff complains that Rule 3.853 does not provide for a movant to obtain certain records or communicate with the agency or analyst regarding the requested DNA testing, (Doc. 2 at 74), it does not have to in order to comport with due process protections, *Alvarez*, 679 F.3d at 1266 n.2. The same is true of Plaintiff's complaint that courts have full discretion whether to grant or deny Rule 3.853 motions. That is so because, to the extent that Florida's postconviction DNA access procedures "either mirror or are more applicant-friendly than the Alaska and federal statutes endorsed in *Osborne*," they pass constitutional muster. *Alvarez*, 679 F.3d at 1266 n.2.

For all the above reasons, Plaintiff fails to state a due process claim.

## B. Access to Courts Claim

Plaintiff asserts a violation of his First and Fourteenth Amendment rights to access to courts, stating the Florida Supreme Court "improperly"

16

dismissed his appeal of his Rule 3.853 proceedings for lack of jurisdiction. (Doc. 2 at 84). Specifically, after DNA testing was complete from Plaintiff's initial Rule 3.853 motion, Plaintiff filed a motion requesting a hearing, which the postconviction court denied. (*Id.* at 85). Plaintiff appealed the denial to the Florida Supreme Court and the State moved to dismiss the appeal for lack of jurisdiction. (*Id.*) The Florida Supreme Court dismissed Plaintiff's appeal for lack of jurisdiction, explaining that "Section 925.11, Florida Statutes, and Florida Rule of Criminal Procedure 3.853 do not contemplate the holding of an evidentiary hearing after the results of DNA testing have been provided to the court, the defendant, and prosecuting authority, which all parties agree has occurred here." *Duckett v. State*, No. SC2026-0959, 2026 WL 1895689, at *1 (Fla. July 1, 2026). It concluded that Plaintiff's "request for an evidentiary hearing is not authorized, and the circuit court's order denying that request is not appealable." *Id.*

Defendants contend Plaintiff's access-to-courts claim is barred by the *Rooker-Feldman* doctrine. *See Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462. The *Rooker-Feldman* doctrine dictates that lower federal courts lack subject matter jurisdiction over claims where the plaintiff in essence seeks to overturn a state court judgment. *Alvarez*, 679 F.3d at 1262. This doctrine "is a limitation on the jurisdiction of the inferior federal courts . . . intended to prevent the federal courts from hearing what are essentially appeals from state court

17

decisions, which may only be heard by the United States Supreme Court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018). Limiting its applicability, however, the Supreme Court has made clear that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1285 (quoting *Exxon Mobil Cop. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). In determining which claims invite rejection of state court decisions and are therefore barred by the *Rooker-Feldman* doctrine, courts consider "whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." *Id.* at 1286 (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). A federal claim is considered to be "inextricably intertwined if it asks to effectively nullify the state court judgment, or succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff's access-to-courts claim falls squarely within the *Rooker-Feldman* doctrine in that it asks this Court to "effectively nullify" the Florida Supreme Court's decision that it lacked jurisdiction to hear Plaintiff's appeal. *Id.* (internal quotation marks and citation omitted). Plaintiff's very argument is that the Florida Supreme Court improperly dismissed his appeal, and

18

granting relief on this claim would amount to effectively reversing that decision—a task reserved only for the United States Supreme Court. *See Casale*, 558 F.3d at 1260. Accordingly, Plaintiff's access-to-courts claim is barred by the *Rooker-Feldman* doctrine and will be dismissed without prejudice for lack of jurisdiction.[5]

Accordingly, it is

**ORDERED:**

1.     Defendants' Motion to Dismiss (Doc. 9) is **GRANTED** to the extent that Plaintiff's due process claims are **DISMISSED with prejudice** and Plaintiff's access to courts claim is **DISMISSED without prejudice** for lack of jurisdiction.

2.     Plaintiff's Emergency Motion for Stay of Execution (Doc. 5) is **DENIED as moot**.

3.     The **Clerk** shall enter judgment dismissing with prejudice Plaintiff's due process claim and dismissing without prejudice for lack of jurisdiction Plaintiff's access to courts claim, terminate any pending motions, and close the file.

---

[5] Although Defendants alternatively assert that Plaintiff has failed to state an access-to-courts claim, "[w]here dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds [and the] dismissal is without prejudice." *Boda v. United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983).

**DONE AND ORDERED** in Jacksonville, Florida, on July 27, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record